Motion to dismiss denied November 25, 1924, argued on the merits
    December 22, 1926, affirmed January 18, rehearing denied
    March 8, motion to recall mandate denied April 12, 1927.

## A. H. EILERS *v.* S. J. McCORMICK.

(252 Pac. 87.)

**Corporations—In Action to Recover on Notes Given for Purchase Price of Stock, Verdict Held Sustained by Evidence Showing Consideration (Const., Art. VII, § 3c).**

In action on notes for purchase price of stock in corporation in which defense was failure of consideration, verdict of jury *held* sustained by evidence indicating solvency of corporation at time of sale and sale for value, in view of Constitution, Article VII, Section 3c, providing no fact tried by jury shall be otherwise re-examined by court unless verdict is not supported by any evidence.

Appeal and Error, 4 C. J., p. 854, n. 70.
Bills and Notes, 8 C. J., p. 1048, n. 21, p. 1049, n. 25.

From Multnomah: ROBERT TUCKER, Judge.

Department 2.

This is an appeal from a judgment for the recovery of money alleged to be due upon four several promissory notes each in the sum of $253.23, dated at Portland, Oregon, January 19, 1916, payable 26, 30, 32 and 34 months after date respectively, with interest at the rate of 7 per cent per annum from maturity until paid, made and delivered by defendant to plaintiff as a part of the purchase price of stock in a corporation. The notes further provide for a reasonable attorney's fee in case of action to collect the same.

The defendant resists the payment of the notes. In his answer filed in the court below, he averred that there was a failure of consideration for the notes; that such notes, in addition to others, were executed and delivered to the plaintiff for stock in a corporation, and that no stock was ever delivered, or, if it was delivered, that it had no value. He likewise filed

a counterclaim for the amount of cash he had paid to the plaintiff for such stock. The jury having returned a verdict in favor of the plaintiff, defendant appeals, assigning error of the trial court as follows:

"That on the evidence no amount should have been given to plaintiff, and on all the evidence the amount was excessive.

"The court erred in failing to find that there was a total failure of consideration."

AFFIRMED. REHEARING DENIED.

For appellant there was a brief and oral argument by *Mr. Thomas Mannix.*

For respondent there was a brief over the names of *Mr. H. C. King* and *Mr. S. J. Silverman,* with an oral argument by *Mr. King.*

BROWN, J.—1. It is evident from the assignments of error that this case presents questions of fact only. At the inception we are met with the following constitutional provision:

"No fact tried by a jury shall be otherwise re-examined in any court of this state, unless the court can affirmatively say there is no evidence to support the verdict." Art. VII, § 3-c, Or. Const.

This language requires no exposition. It is plain, and manifestly means what it says.

The plaintiff gave some competent testimony in support of each material allegation of his complaint. The record shows that the defendant was the vice-president and director of the corporation known as Graves & Company, the corporation that issued the shares of stock purchased by him and paid for in part by the execution and delivery to plaintiff of the

negotiable instruments involved in this action, and that, at the time of its sale and delivery to him, this stock represented value. On being asked why he bought these shares of stock, the defendant replied:

"All right, I am glad you asked me that question. There was continual friction and turmoil going on all the time there between the two brothers (Hy Eilers and A. H. Eilers), and at one time I absolutely had to separate them from fistic encounter. * * A house divided against itself has got to fall. I had difficulty in making sales. * *

"Q. Then the relationship was rather strained between the two brothers? A. Very much so at times. * *

"Q. That was really the reason the stock was sold by A. H. Eilers and why you purchased it? A. Oh, I suppose that is it. I don't know why he sold it at all, but I thought that was one way of getting the thing settled.

"Q. Then you bought the stock? A. Yes.

"Q. And you bought seventy shares of stock, is that right? A. Yes. * *

"Q. Your signature stated there you had received seventy shares of stock? A. I believe that is correct. I believe that is correct. * *

"Q. Now, what was the condition of the Graves Music House when you first bought the stock in that company? Was it good or bad financially? A. I think very good.

"Q. And when you purchased the stock from A. H. Eilers from the Graves Music House, what was the financial condition of the company at that time? A. Well, I don't know, but I would imagine it was solvent. * *

"Q. Then that being the case, you expected to make and derive some benefits out of this deal with A. H. Eilers, didn't you, by the purchase of the stock from A. H. Eilers? A. Yes, sir; we would not have that turmoil there, and we would expect to be able to conduct our business.

"Q. Yes. And therefore expected to obtain financial benefits through that deal? A. Yes, sir."

According to the testimony, a few months after the sale of this stock to defendant the name of the corporation was changed to the Oregon Eilers Music House.

The defendant refers in his pleading to the case of *In re Eilers Music House*, 270 Fed. 915. A brief review of the statement of facts in that case shows the long association of defendant with Hy Eilers and A. H. Eilers in the music business. From that statement we quote the following:

"Prior to the year 1902, H. J. Eilers, familiarly known as Hy Eilers, A. H. Eilers (plaintiff herein) and S. J. McCormick (defendant herein) were engaged in the business of selling musical instruments in Portland, Oregon, the firm being known as Eilers, McCormick & Company. In that year, these individuals incorporated their business under the name of Eilers Piano House, and continued to operate as such until the year 1910. They were the sole owners of the business except as a few shares of stock became scattered now and then among a few of their employees, associates or relatives. In the main, H. J. Eilers was the owner, manager and directing head of this corporation."

It appears from the record in that case that, in February, 1908, Hy Eilers, A. H. Eilers and S. J. McCormick purchased the capital stock of Graves & Company. The record further discloses the following facts:

"In April, 1910, the Music House, the bankrupt, came into existence through the initiative of the same individuals, H. J. and A. H. Eilers and S. J. McCormick. * * In August, 1916, supplementary articles of incorporation of Graves Company were filed in the

office of the Secretary of State, by which the name
was changed to Oregon Eilers Music House.''

The defendant herein claims by his answer that
H. J. and A. H. Eilers looted the Oregon Eilers Music
House by borrowing large sums of money from vari-
ous persons, which they charged against the corpora-
tion. He likewise alleges:

" * * The said corporation was wrecked and was
put into bankruptcy and was adjudged a bankrupt in
1922, * * and the said defendant herein had nothing
to do with the said Oregon Eilers Music House since
August, 1918, and that, at the time the said defendant
herein left the said corporation, the same was in a
flourishing and profitable condition.''

The testimony of the plaintiff is to the effect that
he was voted off the board of directors of Eilers
Music House, and that an attempt was made to put
him off the board of directors of Graves & Company.
He further testified that Hy Eilers and McCormick,
defendant herein, wished to change the name of
Graves & Company to Oregon Eilers Music House,
but that he refused his consent and informed them
that ''the only way you can change the name of the
Graves Music Company to Oregon Eilers Music
House is for you boys to buy my stock, and then you
can do as you see fit,'' whereupon they bought his
entire holding of stock in Graves Music Company, the
defendant acquiring seventy shares thereof and in
payment therefor executing and delivering, among
other notes, those involved in this litigation.

Further reference to the record, in order to show
that the allegations of plaintiff's complaint are sup-
ported by competent and material evidence, is un-
necessary.

·Under the mandate of our Constitution above noted, we are required to affirm this judgment. It is so ordered.

AFFIRMED. REHEARING DENIED. MOTION TO RECALL MANDATE DENIED.

BEAN, RAND and BELT, JJ., concur.